**STATE**

v.

**Richard FOGARTY.**

**No. 79–495–C.A.**

Supreme Court of Rhode Island.

Aug. 27, 1981.

Dennis J. Roberts II, Atty. Gen., John E. Migliaccio, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant from a Superior Court judgment of conviction of murder in the second degree. The defendant raises a number of issues which will be dealt with in the order in which they are raised in the defendant's brief. The general facts of the case are as follows.

In the early morning of October 24, 1978, Patrolman Luke of the Providence Police Department received a radio broadcast concerning a shooting at 237 Sterling Avenue in that city. He proceeded to that address and was admitted into the house by Timothy Bolman. At the top of a flight of stairs, the patrolman saw the body of the victim, Patricia Finnergan. The patrolman then asked Bolman who was responsible for the shooting. Bolman pointed to Richard Fogarty, the defendant. Patrolman Luke arrested Fogarty, who spontaneously stated, "I don't know why I did it." At the time of the arrest, Luke testified that defendant walked steadily and that his speech was understandable. Patrolman Luke then placed defendant in the custody of another patrolman and returned to the house where he found a gun on the kitchen floor.

Detective Phillip Collins testified that he advised defendant of his constitutional rights at 2:30 a. m., October 24, at the police station and that defendant appeared to understand the rights and agreed to waive them. Detective Collins stated that defendant had an odor of alcohol about him and that he slurred the word "confrontation" but had no difficulty in reading back the admonitions contained on the "rights form." The statement indicated that defendant loaded a sawed-off shotgun that was in his bedroom, shot Patricia Finnergan, and placed the gun on the floor. He stated during the course of the statement that he did not know why he had shot Patricia. Other witnesses corroborated various aspects of the events leading up to and culminating in the shooting. The defendant presented various witnesses and took the stand on his own behalf in order to establish that he was an alcoholic and that he was so severely intoxicated at the time of the shooting as to have been unable to form a specific intent to kill.

On appeal defendant raises two major issues.

### I

### THE CHALLENGE TO THE COMPOSITION OF THE GRAND AND PETIT JURIES

Prior to trial defendant filed a motion challenging the composition of the grand and petit juries on two grounds: (1) the exclusion from jury service of all persons between the ages of eighteen and twenty-one; and (2) the exemption given to professors and students at recognized colleges and universities was in violation of the requirement that jurors should represent a cross section of the community.

The trial justice conducted a hearing on the question of the composition of the grand and petit juries. The sole thrust of the defense position at this hearing as set forth in the testimony of Professor James Wright of the University of Massachusetts was to the effect that young people between the ages of eighteen and twenty-one form a cognizable class in the community and that they formed a portion of the state's population of approximately 5.90 percent. An examination of the testimony of Professor Wright as well as the direct examination of Jury Commissioner Alfred Travers, Jr. discloses a complete absence of any reference to any academic group, but rather a complete concentration and reference to young people in the eighteen to

twenty-one-year-old age group.[1] From the foregoing presentation of evidence, only one possessed of occult skills would ever draw the inference that defendant was engaged in forming a factual predicate for an objection to the exemption granted to members of the academic community even though the motion itself had contained such an assertion.

■ On appeal, however, the public defender has included extensive reference to a study that was completed by personnel of the public defender's office after the date of the hearing. No reference is made on appeal to the exclusion of persons in the eighteen to twenty-one-year age group, and all concentration is upon the exemption of members of the academic community based upon figures and data which were never presented to the trial justice. Nothing is more well settled in terms of appellate practice than the proposition that a matter may not be raised on appeal which was not initially presented and articulated in the trial court. *State v. Robalewski*, R.I., 418 A.2d 817 (1980); *State v. Pope*, R.I., 414 A.2d 781, 786–87 (1980). It is true that we have considered in limited circumstances alleged deprivation of basic constitutional rights for the first time on appeal. *State v. McGehearty*, R.I., 394 A.2d 1348 (1978). However, in that case the issue raised was not known to counsel as a viable constitutional claim at the time of the trial. Moreover, there was apparently no intentional bypass of the issue. In the case at bar, the choice not to present evidence or data regarding the exemption granted to members of the academic community can only be construed as a considered choice on the part of counsel.

■ A mere oblique reference to an issue that is not litigated and upon which a factual predicate is not even sought to be made furnishes no basis for appellate review. On the record before us, we cannot fault the trial justice for having failed to rule upon a question that was not presented to him in a rational and recognizable posture.

## II

## EVIDENTIARY RULINGS ON THE ISSUES OF INTOXICATION AND ALCOHOLISM

(A) Testimony of Lay Witnesses Concerning Defendant's State of Intoxication

■ A number of witnesses, all relatives of defendant, testified concerning the consumption of alcohol by defendant on the date in question. They further testified concerning his physical appearance, his speech, the odor of alcohol, and other observations which might lead to the inference of intoxication, although these witnesses were not permitted to testify concerning their conclusion that defendant was intoxicated or drunk. Many states permit lay witnesses, as a means of shorthand rendition, to testify concerning conclusions or inferences relating to corporal appearance of persons and things. Many jurisdictions exclude such testimony on the ground that lay wit-

---

1. The direct examination of Commissioner Travers was extremely brief and consisted of the following:

    "Q Mr. Travers, are you employed, sir?
    "A What is that?
    "Q Are you employed?
    "A I am.
    "Q And in what capacity are you employed?
    "A Jury Commissioner from the State of Rhode Island.
    "Q And what are the duties which you perform pursuant to your employment?
    "A My primary responsibility is the control of jurors, jury list, selection of jurors, and investigation of jurors, and of their qualifications.

    "Q Mr. Travers, are you familiar with Section [9–9–1] and Section [9–9–3] of the General Laws of the State of Rhode Island?
    "A I am.
    "Q And can you tell the court what Section [9–9–1] proscribes or describes in terms of the qualifications of jurors?
      "MR. TATE: Objection. I think—
      "THE COURT: Sustained. Section speaks for itself.
      "MR. LONG: Very well.
    "Q Mr. Travers, do you perform your function as Jury Commissioner in accordance with Section [9–9–1] and [9–9–3] of the General Laws of the State of Rhode Island?
    "A I do.
      "MR. LONG: I have no further questions."

nesses should be confined to testimony concerning their first-hand observations as opposed to their inferences or conclusions drawn from such observations. The history of this philosophic legal dispute is set forth in 7 Wigmore, *Evidence* §§ 1917–1919 at 1–17 (Chadbourn rev.1978). Wigmore suggested:

> "[T]here is no virtue in any test based on the mere verbal or logical distinction between 'opinion' and 'fact.' In all the law of evidence, there is no instance in which the use of a mere catchword has caused so much error of principle and vice of policy: error of principle, because the distinction between 'opinion' and 'fact' has consistently and wrongly been treated as an aim in itself and a self-justifying dogma; vice of policy, because if this specious catchword had not been so handily provided for ignorant objectors, the principle involved would not have received at the hands of the bar and the bench the extensive and vicious development which it has had in this country." *Id.* § 1919 at 14.

Wigmore continued the criticism of this rule in commenting upon use of opinions to describe corporal appearance of persons and things in the following terms:

> "The opinion rule is often sought to be applied to forbid compendious descriptions of the *appearances externally indicating internal states*—for example whether a person 'looked' sick or sad or angry [or intoxicated]. There is no more reason in this class of cases than in the preceding one for the opinion rule to exclude the testimony. The exclusionary rulings here abound particularly in absurdities and quibbles—highly fit for cynical amusement, were not the names of Justice and Truth involved in their consideration. One may wonder how long these solemn farces will be perpetrated in our law." *Id.* § 1974 at 153–62.

Although Rhode Island has no case that specifically passes upon this point, many courts have permitted lay witnesses to testify concerning the inference that a person appears to be intoxicated. *See, e. g., Snow v. State,* 50 Ala.App. 381, 279 So.2d 552, *cert. denied,* 291 Ala. 798, 279 So.2d 558 (1973); *People v. Beal,* 44 Cal.App.3d 216, 118 Cal.Rptr. 272 (1974); *People v. Norman,* 194 Colo. 372, 572 P.2d 819 (1977); *State v. Jones,* 124 Conn. 664, 2 A.2d 374 (1938); *State v. Durrant,* 55 Del. 510, 188 A.2d 526 (1963); *People v. Sprinkle,* 74 Ill.App.3d 456, 30 Ill.Dec. 439, 393 N.E.2d 94 (1979); *State v. Davis,* 196 N.W.2d 885 (Iowa 1972); *State v. Libby,* 153 Me. 1, 133 A.2d 877 (1957); *State v. Schneider,* 311 Minn. 566, 249 N.W.2d 720 (1977); *State v. Arsenault,* 115 N.H. 109, 336 A.2d 244 (1975); *State v. Shiren,* 9 N.J. 445, 88 A.2d 601 (1952); *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Denham v. State,* 574 S.W.2d 129 (Tex.Crim.App.1978); *State v. Norton,* 134 Vt. 100, 353 A.2d 324 (1976). However, even states that recognize the rule sometimes have difficulty in applying it. *See Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978); *State v. Norton, supra.*

We note that the Federal Rules of Evidence provide in Rule 701 that a nonexpert witness may testify to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In commenting upon this rule, the advisory committee's note states in part:

> "Witnesses often find difficulty in expressing themselves in language which is not that of an opinion or conclusion. While the courts have made concessions in certain recurring situations, necessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration. McCormick § 11. Moreover, the practicial impossibility of determining by rule what is a 'fact,' demonstrated by a century of litigation of the question of what is a fact for purposes of pleading under the Field Code, extends into evidence also. 7 Wigmore, § 1919." Fed.R. Evid. 701, Advisory Committee's Note.

We believe on the basis of an examination of the foregoing authorities that the

better and more progressive rule is to allow the short-hand rendition of such external appearances as intoxication by lay witnesses as long as the witness has had an opportunity to observe the person and to give the concrete details on which the inference or description is founded. *McCormick's Handbook of the Law of Evidence*, § 11 at 25–26 (2d ed. Cleary 1972).

In Rhode Island the law on this point might be described as unsettled though to some extent illuminated by the general principles enunciated in *State v. Gabriau*, 113 R.I. 420, 322 A.2d 30 (1974), and *State v. Lutye*, 109 R.I. 490, 287 A.2d 634 (1972). In *State v. Lutye* we observed:

> "While there is no hard and fast rule which tells us when a nonexpert may augment his testimony of what he saw with an opinion, there are broad principles which provide some guidance. Thus, it is established that he may venture an opinion where ' * * * the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending.' "[2] *Id.* at 494, 287 A.2d at 637.

An application of the foregoing rule might properly have been determined by the trial justice to limit the testimony of the lay witnesses to a description of what they had observed with their senses although it could also be interpreted to allow the expression of an opinion since intoxication is a condition that men and women in general are capable of comprehending. We believe that the better interpretation would have allowed testimony regarding the opinion or conclusion of the witnesses on this issue as Wigmore recommended. Nevertheless, we cannot say that on the state of the

law as evidenced by our prior opinions, the trial justice committed error.

■ Moreover, since he did allow an abundance of evidence relating to the appearance of defendant, his conduct and speech, the amount of his alcoholic consumption, and his appearance and actions at the bar where his mother was employed, there was more than enough evidence presented to the jury from which it could itself have drawn the necessary inference. Consequently, although the rule recognized by the trial justice may not have been the most progressive in the views of evidentiary commentators, it did not prejudice defendant.

(B) The Ruling Prohibiting Dr. Johnston from Testifying that Richard Fogarty was an Alcoholic

■ Doctor Robert Johnston, Jr., a board-certified psychiatrist with a medical degree from the University of Oxford in England and extensive clinical as well as academic experience, testified at length concerning alcoholic blackout, retrograde amnesia, and his observations of defendant whom he had examined for the purposes of forensic preparation rather than for treatment. On direct and cross-examination Dr. Johnston was permitted to testify that defendant's behavior was consistent with one who had acted in an alcoholic blackout. However, the trial justice ruled that an insufficient foundation had been laid in order to permit his giving an opinion concerning whether or not defendant was an alcoholic. Try as he would, defense counsel was not able to devise a hypothetical question that contained sufficient elements to satisfy the prosecutor and the trial justice. The ultimate decision of the trial justice on this point is encapsulated in his response to an offer of proof made by counsel for defendant.

---

**2.** This statement of principle is consonant with the earlier case of *State v. Prescott*, 70 R.I. 403, 40 A.2d 721 (1944), where Justice Condon stated in respect to the condition of consciousness:

> "It is true that an ordinary observer who has enjoyed suitable opportunities for observation may state an inference as to whether a

given individual was conscious or unconscious, but it is also well recognized that a witness who is not an expert will not be permitted to give such an opinion until he has first stated the facts upon which he bases his inference." *Id.* at 410, 40 A.2d at 725.

"THE COURT: And the reason why the Court denied your motion to permit the answer was that there was a failure to lay a proper foundation, that the foundation you laid was not laid at all. There was nothing on the record that had been laid where it related to any reliable, probative, admissible evidence. The foundation that was laid by counsel was that it was strictly hearsay material and required material of other individuals which was told to the Doctor. The Doctor had examined this patient solely for the purposes of giving testimony in this court and not for any treatment; and the Court had found that there was a lack of a proper foundation being laid by counsel so that there could be no admissibility of this evidence. Your objection is noted. Your exception is recorded."

Thus, the trial justice was applying the familiar rule that although a treating physician may give his opinion positively and directly, rather than in the muffled abstract form of an answer based upon an hypothesis, a forensic expert who has not treated the patient may not give an opinion on the basis of reports and information gained from third parties. *McCormick's Handbook of the Law of Evidence* §§ 14–15 at 31–36. This majority rule has led to some bizarre results, such as that in *Treadwell v. Nickel*, 194 Cal. 243, 228 P. 25 (1924), where reference is made to a question that extended over eighty-three pages of typed transcript, and the objection asserted thereto covered another fourteen pages of transcript. Such results have caused text writers to believe that the hypothetical question does not work in practice and should probably be abandoned. *See* 2 Wigmore, *Evidence* § 686 (Chadbourn rev. 1979); *McCormick's Handbook of the Law of Evidence* § 16 at 36.

Moreover, the Federal Rules of Evidence in Rule 703 now permit an expert witness to base an opinion on facts or data "perceived by or made known to him at or before the hearing." The rule goes on to provide that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." In commenting upon this rule, the advisory committee's note points out that physicians in practice base their diagnoses on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians, and other doctors, and hospital records and X-rays. Most of them are admissible in evidence but only with the expenditure of substantial time in producing and examining various authenticating witnesses.

"The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." Fed.R.Evid. 703 Advisory Committee's Note.

Thus, it would appear that the more enlightened view would support the allowing of the doctor in this case to give an opinion on the condition of alcoholism based upon his examination of defendant and his interviews with various family members as well as his submission to defendant of the so-called Michigan test. It must be pointed out, however, that in spite of Wigmore's criticism of the practice, 2 Wigmore, *Evidence* § 682 (Chadbourn rev. 1979), this court has rather consistently required that an expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion. *Alterio v. Biltmore Construction Corp.*, R.I., 377 A.2d 237 (1977); *Nasco, Inc. v. Director of Public Works*, 116 R.I. 712, 360 A.2d 871 (1976); *L'Etoile v. Director of Public Works*, 89 R.I. 394, 153 A.2d 173 (1959). Moreover, when an expert has relied upon facts that are not in evidence, this court has permitted and approved the use of the hypothetical question. The court has stated that

"a hypothetical question to an expert witness must embrace all the essential elements of the situation as they appeared in evidence. And unless the question, as posed, contains all the pertinent, undisputed facts, its exclusion by the trial justice is not an abuse of discretion." *Tav-*

*ernier v. McBurney*, 112 R.I. 159, 161, 308 A.2d 518, 520 (1973).

However vehemently Wigmore may have opposed this principle, 2 Wigmore, *Evidence* § 682(b) (Chadbourn rev. 1979), the trial justice was entitled to rely upon it. We cannot say that in the absence of our explicitly enunciating a new rule, the trial justice committed an abuse of discretion in following the apparent directions of this court.[3]

In any event the purpose of eliciting evidence about defendant's condition of alcoholism was designed as a question preliminary to determining his susceptibility to an alcoholic blackout, which might have made him appear to the officers to be reasonably coordinated and in possession of his faculties even though in fact he was not. Thus, the trial justice's refusal to allow this preliminary testimony did not preclude the witness from giving extensive testimony concerning the alcoholic blackout and the possibility or probability that defendant may have experienced such a phenomenon just prior to and subsequent to the shooting. As a consequence, since the jurors were given the benefit of the principal thrust of Dr. Johnston's testimony concerning retrograde amnesia and the alcoholic blackout and since they were possessed of sufficient testimony concerning defendant's addiction to alcohol and his intoxication on the day in question to draw ultimate inferences for themselves, we are of the opinion that defendant was not prejudiced by any ruling that precluded testimony concerning the condition of alcoholism.

(C) The Refusal of the Trial Justice to Permit Austin O'Toole to Testify Concerning Defendant's Alcoholism

The defendant presented Mr. Austin O'Toole as a witness on the subject of his condition of alcoholism. The testimony indicated that Mr. O'Toole was a former teacher who has been employed as an alcoholism counselor by the Rhode Island Family Court. His postgraduate education consisted of a number of extension courses on the subject of the counseling of alcoholics. These courses did not result in the conferring of an additional academic degree. The trial justice determined that Mr. O'Toole was not competent to express an opinion on the subject of this condition or status. Our examination of Mr. O'Toole's testimony indicates that he had no expertise in diagnosis and has no medical knowledge. Essentially, if a person or a person's family admits to a condition of alcoholism, Mr. O'Toole would accept the recognition of the problem and would attempt to be of assistance to the person involved. The court therefore, did not believe that there was a sufficient predicate upon which he could base an opinion that defendant was an alcoholic. In Rhode Island the determination of the qualifications of an expert witness is within the discretion of the trial justice. We review the exercise of that discretion only for abuse. *State v. Anil*, R.I., 417 A.2d 1367 (1980); *State v. Benton*, R.I., 413 A.2d 104 (1980); *State v. Arpin*, R.I., 410 A.2d 1340 (1980). A review of the record of Mr. O'Toole's preliminary examination by the court discloses no abuse of discretion in the court's refusing to allow his testimony on the subject.

We are of the opinion that the evidentiary rulings challenged by the defendant were either nonprejudicial to defendant or within the bounds of discretion. As a consequence, neither individually nor cumulatively did they constitute reversible error.

For the reasons heretofore stated, the appeal of the defendant is denied and dismissed, the judgment of conviction is affirmed, and the papers in the case may be remanded to the Superior Court.

---

**3.** At the present time a committee of this court is considering the adoption of rules of evidence patterned upon the Federal Rules of Evidence that have been in effect in United States courts since July 1, 1975.