STATE

v.

**Michael BOWDEN.**

No. 83–67–C.A.

Supreme Court of Rhode Island.

March 8, 1984.

Dennis J. Roberts II, Atty. Gen., Kenneth P. Madden, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief, Appellate Div., for defendant.

## OPINION

KELLEHER, Justice.

This is the second time we have had the opportunity to consider an appeal from a conviction of the defendant, Michael Bowden (Bowden). His conviction was for manslaughter, the decedent a twenty-three-month-old child. Although the facts are discussed in our earlier decision, *State v. Bowden,* R.I., 439 A.2d 263 (1982), we shall repeat those relevant to the issues in this appeal.

At the time of the child's death, Bowden was a dental technician in the United States Navy and was living with his girl friend, Yvette Harris, in Newport. He developed a close relationship with Ms. Harris's children, David and Michael (the decedent). He looked after David and Michael from November 28, 1977, through December 1, 1977, while Yvette was at work. (Bowden was on holiday leave at this time.)

On December 1, Bowden burst into the apartment adjacent to Ms. Harris's apartment, holding Michael in his arms. The child was choking on what was found to be a piece of paper towel lodged in his throat. Although Bowden attempted to resuscitate Michael, the child soon lapsed into a coma. He died sixteen days later.

Bowden was charged with manslaughter and convicted on the basis of two areas of testimony. The first was by Dr. William Q.

Sturner, the state medical examiner. He testified that it was his opinion that the death resulted from a head and brain injury produced in a homicidal manner.[1]

The second area was testimony from the neighbors living on both sides of the Harris home. The neighbors from three adjacent apartments testified that they heard sounds of slapping, banging, and screaming in the days immediately preceding the child's death.

Particularly damaging testimony came from Wayne Henderson, a neighbor who was in the apartment into which Bowden brought the choking child. Mr. Henderson testified that he saw bruises on the child and that these bruises looked like "fist marks."

These facts provide the substantive foundation for the legal issues presented in the appeal. Before approaching the questions they present, we must first answer the problems presented by a so-called *Jenison* motion.

*State v. Jenison,* R.I., 405 A.2d 3 (1979), held that the total exclusion of the college and university academic community from the grand-jury selection process deprived a defendant of a due-process right to be indicted by an impartial grand jury. *State v. O'Coin,* R.I., 417 A.2d 310 (1980), made the holding applicable to those indictments from grand juries impaneled after January 21, 1975. *State v. Rohelia,* R.I., 428 A.2d 1064 (1981), allowed a *Jenison* motion to be considered after the declaration of a mistrial even though the motion was not made prior to the first trial.

Our rationale for *Rohelia* was that once a mistrial was declared, the defendant returned to pretrial status and the trial is treated for procedural purposes as though it had never taken place. R.I. 428 A.2d at 1065–66. Bowden now claims that since we have overturned his conviction, he, like Rohelia, returns to a pretrial posture.

---

1. Doctor Sturner admitted that two accidental falls taken by the child, one a bathroom fall, another a fall against a dresser, could have contributed to the injuries; but the death was nevertheless homicidal, he insisted.

As an abstract proposition of law, that claim has an element of truth. However, there are other elements of truth applicable to Bowden's situation which sufficiently distinguish him from Rohelia. First, the fact remains that Bowden has been convicted of the crime charged—now twice—by an impartial petit jury.

There is a difference between the functions of a grand and a petit jury. The grand jury determines only whether there is sufficient evidence to indict the defendant. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397, 402 (1956). The purpose of a trial is to determine whether the charges are true beyond any reasonable doubt. *In re Pereira,* 111 R.I. 712, 714, 306 A.2d 821, 823 (1973). Bowden has twice been convicted by an impartial jury under this higher standard.

We indicated in a footnote to *Rohelia* that "[w]hen a conviction has been obtained against a defendant who has not raised the *Jenison* issue prior to trial, the issue may not be raised thereafter. The conviction renders the jury challenge moot. *Id.* 405 A.2d at 8 n. 5." R.I., 428 A.2d at 1066 n. 2. It may be true that this footnote was dicta as applied to *Rohelia.* However, as it is applied here, it is law.

We may now turn to the substantive areas raised by Bowden. The first of these is that the trial court erred when it refused to charge the jury on the law of accidental death.

Initially, we note that a trial justice is required to charge the jury with respect to the defendant's theory of the case. *State v. D'Alo,* R.I., 435 A.2d 317 (1981). However, this rule cannot be blindly applied without due regard to the facts presented at trial and the very nature of the proffered charges.[2] We recently reiterated this standard in *State v. Crowhurst,*

470 A.2d 1138 (R.I., 1984), where we stressed that a defendant is entitled to a charge that informs the jury of the relevant propositions of the law but that no error lies when the instruction given sufficiently covers the aspects of the defendant's case. *Id.* at 1146. The charge, of course, must have something to do with the testimony and the law.

We recently considered the propriety of a similar accident charge in *State v. Durand,* R.I., 465 A.2d 762 (1983). The defendant in *Durand* was convicted of killing her four-and-one-half-month-old son. Testimony given by the state medical examiner indicated that the child was a victim of child-abuse syndrome. Durand said that the death was caused by her two-year-old daughter, who accidentally dropped the baby. *Id.,* 465 A.2d at 765.

We rejected the contention that this testimony required the requested jury instruction. We stated that since the instruction defines the accident as emanating from a lawful act of the defendant and the alleged act was by the hand of the daughter, the instruction was inapplicable. *Id.,* 465 A.2d at 766.

Bowden's argument is doctrinally indistinguishable from Durand's. The accidents alleged are described by Bowden, and his conduct is *not* a factor for their occurrence. The first accident, the fall against the dresser, befell the decedent while Bowden was stationed with the Navy in San Diego. No act performed by him contributed to this fall. The second accident was the result of a slip by the decedent as he was climbing out of the bathtub. Bowden described the fall himself; he had *no* hand in it. Since Bowden, by his own admission, was not responsible for either of the accidents, the instruction was inapplicable.

---

2. The following was the charge the defendant requested:
   "The unintentional killing of a human being *is* excusable and not unlawful when committed by accident and misfortune in the performance of a lawful act by lawful means where the person causing the death acted with that care and caution which would be exercised by an ordinarily careful and prudent individual under like circumstances."

■ Furthermore, what the trial justice did tell the jury was more than sufficient both to explain the applicable law and to cover Bowden's ideas of the case.[3]

We have frequently stated that a charge must be considered in its totality. *State v. Ballard*, R.I., 439 A.2d 1375, 1384 (1982). This charge adequately explained the definition of manslaughter. The trial justice also covered the possibilities raised by the accidents when he told the jurors that they would have to find that Michael Harris died as a result of a nonaccidental killing.

This instruction was not the only time the jurors heard the law with respect to manslaughter. During their deliberations, they asked the trial justice to repeat the applicable law. In response, the trial justice told the jurors that they would have to find "[t]hat an injury or injuries was or were inflicted on the body of Michael Harris; that the injury or injuries were inflicted by this defendant; and that the injury or injuries caused the death of Michael Harris." Since the jury was required to find that Bowden had inflicted the injuries and since the accidents alleged were not by his hand, this supplementary instruction was sufficient.

Bowden also claims that his ability to prove the accident theory of his case was hampered by the decision of the trial justice to limit cross-examination of Dr. Sturner. This cross-examination in the form of hypothetical questions was designed to elicit the possibility that a fall down the stairs in the Harris apartment (thirteen hard wooden steps) caused or contributed to the boy's death.

The state had raised the issue on direct examination, but Dr. Sturner refuted it, calling the injuries "inconsistent" with such a fall. When the hypothetical question was posed on cross-examination by the defense,

the question assumed that Michael Harris had in fact rolled down those steps. The defense could not make an offer of proof for the truth of that proposition, and the objection to it was sustained.

■ We have frequently repeated the doctrine that in Rhode Island the scope of inquiry on cross-examination is a matter entrusted to the discretion of the trial court. *State v. O'Brien*, R.I., 412 A.2d 231, 233 (1980); *State v. Eckhart*, 117 R.I. 431, 435–36, 367 A.2d 1073, 1075 (1977). In the context of the trial, the decision of the trial court to limit the cross-examination was not error. There was no evidence indicating that the child fell down the sairs; Bowden, while on the witness stand, denied that the child fell down the stairs, and in any event, Dr. Sturner indicated that a possible fall was inconsistent with his findings.

Therefore, the trial justice did not abuse his discretion. "While this court has said that fishing on cross-examination is permitted, the trial justice may ask the fisherperson to demonstrate that there is a reasonable possibility there are fish in the pond before the license is issued." *State v. Eckhart*, 117 R.I. at 437, 367 A.2d at 1076. Here the pond was empty, and the trial justice quite properly refused to issue the license.

The final facet of Bowden's appeal poses the most trouble for this court. As we noted in the statement of facts, Wayne Henderson was present when the child, covered with bruises, was brought choking into the apartment next door. He described the bruises as "fist marks." Bowden objected to this testimony, calling it opinion, not properly within the realm of a lay witness without a proper foundation, but the trial justice thought otherwise.

---

**3.** The manslaughter charge given is as follows: "[T]he State of Rhode Island would be required to prove to you before you can return a verdict of guilty of manslaughter against Mr. Bowden, that Michael Harris died as a result of a killing, not accidentally, and of course, not by suicide. * * * So in this

context the State of Rhode Island must prove to you beyond a reasonable doubt that Michael Harris died as a result of injuries inflicted upon him, and those injuries were inflicted upon him by this defendant and that the death occurred as the natural and probable consequence of the defendant's actions."

The rule respecting opinion testimony is that an opinion may be rendered when " 'the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending.' " *State v. Lutye,* 109 R.I. 490, 494, 287 A.2d 634, 637 (1972). As is the case with most legal principles, it is more easily stated than it is applied.

We struggled with the application in *State v. Fogarty,* R.I., 433 A.2d 972 (1981), in which we viewed the rule with respect to a defendant's inebriated condition. Our decision in *Fogarty* was that in situations in which the witness could describe what was perceived and in which the inference was one of general comprehension, the lay witness could testify. *Id.,* 433 A.2d at 976. This decision relied on a liberal trend reflected by the Federal Rules of Evidence. For example, Rule 701 allows a nonexpert to testify to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." After *Fogarty* the Rhode Island rule is "to allow the shorthand rendition of such external appearances as intoxication by law witnesses as long as the witness had an opportunity to observe the person and to give the concrete details on which the inference or description is founded." R.I., 433 A.2d at 976.

The test, therefore, is broken into two parts. The first is an opportunity to view the person. Mr. Henderson clearly is able to meet that test. However, he failed to give the concrete details on which the opinion was founded. Mr. Henderson's testimony was brief and conclusory. No evidence was offered indicating the nature of the bruises, their size, or their coloring. No evidence was offered indicating whether Mr. Henderson had seen bruises created by fists before. Since the requisite predicate set forth in *Fogarty* had not been established, the trial justice should have sustained Bowden's objection.

The fist-mark comment cannot be dismissed as mere harmless error. We discussed this concept in Bowden's earlier appeal.

"In analyzing whether reversible error has been committed, we focus upon similar considerations with respect to either the exclusion or inclusion of objectionable evidence. * * * As for the inclusion of objectionable evidence, such error is harmless if 'it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence.' " *State v. Bowden,* R.I., 439 A.2d at 269.

The nature of the evidence presented against Bowden was circumstantial. The jury was asked to infer from the banging and screaming emanating from the Harris apartment that Bowden was inflicting a beating on the child. The leap from the testimony to the conclusion must have been made easier by the definitive statement from Mr. Henderson that the bruises looked like fist marks.

Indeed, the proposition that this testimony is "harmless error" is discounted by the emphasis that the prosecutor gave it in his closing argument. He twice referred to the body of Michael Harris as having "fist marks" all over it. Twice he referred to Michael Bowden, who was training for the Golden Gloves boxing championships, as having used the instincts of a boxer on the child.

Clearly, therefore, this testimony was not of the sort that lacked influence over the jury's decision. The prosecutor emphasized the testimony and obviously hoped that the jury would infer that the bruises on the child were in fact inflicted by Bowden.

Since "we need only find a reasonable possibility that the error complained of contributed to the conviction for this court to conclude that the evidence was prejudicial," *State v. Burke,* R.I., 427 A.2d 1302, 1304 (1982), we hold that admitting the

"fist marks" testimony was prejudicial error.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.