STATE

v.

Scott A. RONDEAU.

No. 83–560–C.A.

Supreme Court of Rhode Island.

July 31, 1984.

Dennis J. Roberts, II, Atty. Gen., William P. Devereaux, Sp. Asst. Atty. Gen., Providence, for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is a sexual-assault case in which a Superior Court jury found the defendant, Scott A. Rondeau (Rondeau), guilty of having committed a first-degree sexual as-

sault, to wit, digital penetration, and not guilty on a second charge of first-degree sexual assault, to wit, penile penetration. He was sentenced to fifteen years in prison and is now before us on his appeal, in which he raises several issues.

At the time of the incident in question, Saturday evening, February 6, 1982, the alleged victim was a seventeen-year-old high school senior, and Rondeau was a nineteen-year-old auto-body-shop worker. We see no necessity to detail the events of the evening except to point out that sometime during what was to have been a double date, the hysterical victim ran away from Rondeau down a South County road to a house, told its occupants she had been raped, and named Rondeau as her assailant. The occupants, who knew their visitor, took her into the house and called the State Police. In responding to the call, two state troopers observed Rondeau staggering along the roadway a short distance from the house in which the victim had sought refuge. They stopped him and, upon learning his name, placed him under arrest. The victim was first treated and examined at a nearby hospital; she was then taken to the State Police barracks where, in the company of a representative of a rape crisis center, she gave a statement to the police.

■ Several claims of alleged error briefed and argued by Rondeau's appellate counsel[1] were not objected to at trial. Such issues are deemed to have been waived. *State v. Byrnes*, R.I., 433 A.2d 658 (1981); *State v. Duggan*, R.I., 414 A.2d 788 (1980). In beginning our consideration of Rondeau's appeal, we would also stress that we shall discuss only those issues that, in our opinion, merit consideration.

■ Initially, Rondeau claims that the trial justice erred when he refused to dismiss the indictment because of the loss of tangible evidence. When the troopers ex-

---

1. Appellate counsel was not part of the defense team at trial.

amined the area where the alleged assault had taken place, they picked up several articles of the victim's clothing. Upon their return to the barracks, they placed these articles on a desk in a lieutenant's office. At some point between arrest and trial, the articles were lost and thereby became unavailable for trial despite an exhaustive search by the police. Rondeau faults the police for losing the evidence and relies upon *State v. Lewis*, R.I., 467 A.2d 1387 (1983).

In *Lewis* the state, before trial, returned shoplifting evidence to a merchant who then either lost the merchandise or sold it. Lewis claimed this loss amounted to a denial of a fair trial. However, in affirming her conviction, we noted that the lost evidence could easily have been visualized on the basis of the description of the evidence given to the jury. In *Lewis* we balanced the police conduct with the importance of the lost evidence and other proof of the accused's guilt.

Similarly, here there is no evidence that the State Police harbored bad faith in losing the victim's clothing, and we believe that the missing evidence was not nearly so important as Rondeau now claims. He argues that if the clothing had been available for trial, it would have supported his claim that the sexual activities on the night in question were consensual. The trooper who retrieved the clothing testified that none of the articles were ripped or torn and that only one article, a portion of the victim's underclothing, was "stretched out." Rondeau argues that if the jury had observed the clothing and seen that none of it was ripped or torn, it would have believed his claim that the victim had consented. We disagree.

The loss of the clothing was regrettable but not prejudicial. The trooper's testimony confirmed that the clothing was not torn or ripped, and the jury could well have decided from these facts and Rondeau's version of what occurred on a rather cold February evening that the sexual episode that gave rise to this appeal was a mutual-

ly agreeable event, but it did not. The jury, instead, was quite selective. It believed that the sexual activities were anything but consensual and found Rondeau guilty of digital penetration even though the victim had insisted that there had been penile penetration. Obviously, the jury believed Rondeau when he said that the cold weather made any penile penetration impossible.

█ Rondeau also claims he was denied the right to counsel. At trial he was represented by two attorneys, both of whom were in the courtroom for almost the entire trial. After the conclusion of arguments, the trial justice recessed the trial until the following Monday morning. On Monday morning, the trial justice announced to the jury that Rondeau's senior attorney would not be present for the charge because the attorney had to appear before another Superior Court justice. He instructed the jurors that they were to draw no inferences from the attorney's absence. At that time Rondeau neither requested a continuance nor indicated in any manner that he was dissatisfied with the senior attorney's absence. In fact, the senior attorney's associate presented to the trial justice three requests to charge. One, dealing with the jury's consideration of photographic evidence, came after the jury had begun its deliberations and as a direct result, we believe, of the urgings of Rondeau's counsel. Appellate counsel now claims that the trial justice should have inquired whether or not Rondeau wished to waive his right to counsel, and that his failure to do so was error. We disagree.

No inquiry was ever required because Rondeau was never without counsel. He was represented by counsel throughout the entire proceedings. The attorney who was present at the charge phase of the trial had previously played a significant part in the trial as he sought to prevail on the motion to dismiss the indictment on the basis of the missing clothing. This and the requests to charge give every indication that

the attorney in question was highly aware of the responsibilities that were his.

Rondeau next argues that the trial justice erred in allowing evidence that Rondeau had been drinking on the night in question. In taking this position, he relies on *State v. Amaral,* 109 R.I. 379, 285 A.2d 783 (1972), which involved the introduction of evidence by the prosecution of a defendant's drinking in a criminal trial in which he was charged with driving while under the influence of intoxicating liquor and reckless driving, death resulting. We held in *Amaral* that the trial justice's failure to determine, prior to the witness's testifying before the jury, whether the proposed testimony would be sufficient to prove intoxication was reversible error.

Here the references to Rondeau's drinking came from both sides. The major portion of the drinking testimony emanated from one of the defense witnesses. He was Rondeau's male companion on the night in question. He testified that he and Rondeau had had about eight or nine beers prior to the time they went double dating with the victim and her girl friend. He also estimated that during the time the quartet was parked in a secluded area, Rondeau consumed six or seven servings of rum. As is obvious, we see no error in this ruling.

Rondeau also argues that the examining physician should not have been allowed to testify that the victim had never had sexual intercourse prior to her date with Rondeau. He claims that this evidence was both irrelevant and highly inflammatory and should have been excluded under *State v. Gibbons,* R.I., 418 A.2d 830 (1980). That case, which dealt with the use of evidence of prior sexual conduct of the complaining witness in a sexual-assault case, held such evidence irrelevant to the issue of consent. This case deals with the *lack* of prior sexual conduct of the complaining witness in a sexual-assault case. Even assuming that the evidence was erroneously admitted, we do not see how Rondeau was prejudiced because the jury verdict clearly indicates that it did not believe that any penile penetration had occurred.

Rondeau next claims the trial justice erred in allowing a lay person to give opinion testimony. This occurred when one of the troopers testified over objection that Rondeau "looked like he had been involved in a fight." Rondeau contends that under *State v. Bowden,* R.I., 473 A.2d 275 (1984), and *State v. Lutye,* 109 R.I. 490, 287 A.2d 634 (1972), lay opinion testimony can be offered only when " 'the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending.' " *State v. Bowden,* 473 A.2d at 280 (*quoting State v. Lutye,* 109 R.I. at 494, 287 A.2d at 637).

There is a two-pronged test for the admission of lay opinion testimony: first, the witness must have had the opportunity to view the person or event—certainly the trooper was afforded this opportunity—and second, the witness must supply the concrete details upon which his opinion was founded. *State v. Bowden,* 473 A.2d at 280. In reaching the conclusion that Rondeau looked as if "he had been involved in a fight," the trooper pointed to Rondeau's torn pants; his uncombed hair; his clothes, which seemed to be "disheveled"; and the scratches on his face. Thus, the rule first cited in *Bowden* has been satisfied.

Rondeau claims that a photograph that was introduced by the state told it all and that there was an unnecessary gilding of the lily when the trooper was allowed to describe the arrestee's appearance. We disagree. The photograph and the description complement each other; the photograph merely shows Rondeau's face, and the trooper's testimony described the whole person. Together they support the conclu-

sion that Rondeau looked "like he had been involved in a fight."

■ The trial justice refused to allow the arresting officer to testify concerning Rondeau's attitude and responses following his arrest as the defense sought to show that Rondeau had openly and directly answered all the questions asked of him. Rondeau now faults the trial justice for sustaining the state's objection to this line of inquiry. An attempt to introduce an exculpatory statement he had made after his arrest was also rejected. Recently, we held in *State v. Ortiz*, R.I., 448 A.2d 1241 (1982), that statements given by a defendant to a psychiatrist in anticipation of trial were properly excluded as self-serving. We see no difference between those and statements made to the officer investigating the crime.

■ Rondeau now claims that the trial justice erred in restricting his cross-examination of the victim regarding her contacts with a representative of a rape crisis center. After the victim had been examined and treated at the hospital, she was taken to the Hope Valley State Police barracks. There she met the center's representative. During cross-examination the victim was asked whether the representative had counseled her in any manner. The state objected, and the trial justice sustained this objection. The victim was also asked whether or not she had given any oral or written statements to the representative. Once again the state objected, and its objection was sustained. The victim was also asked whether or not the representative was present when the police interviewed her at the barracks. Again the state objected, and again the objection was sustained.

The witness was then shown the question-and-answer statement she had given to the police at 7:15 a.m. on February 7, 1982,

and asked to read "the first two questions and the first two answers of that statement to yourself." When the trial justice inquired of counsel the purpose of confronting the witness with her prior statement, the response was "to refresh her recollection, your Honor." The trial justice responded by informing defense counsel that the witness showed no need to have her recollection refreshed and that the statement could be used only to impeach her in areas in which her courtroom testimony varied from what was contained in the statement. At that point, counsel approached the bench and sought a bench conference.

At the conclusion of the off-the-record conference, the trial justice announced that "Counsel has approached the bench and indicated that he desires to use the statement for a purpose. I have indicated to him that the statement is available to him for impeachment purposes only. I'm familiar with the first two questions. I've granted his exception to using the statement to have the witness refresh her recollection or to bring to her attention who was or was not present when she gave that statement. It's immaterial. It's irrelevant. Exception is noted."[2]

Rondeau's appellate counsel now argues that because of the trial justice's actions, Rondeau's conviction should be summarily reversed on the basis of our holding in *State v. DeBarros*, R.I., 441 A.2d 549 (1982). In *DeBarros* we adopted the rule that a trial justice commits error per se whenever he bars an attempt to place before a jury the witness's bias or motive. However, an examination of the record indicates that *DeBarros* is of no assistance to Rondeau. The statement given by the victim clearly indicates that at the time that she was being interrogated, the representative was there at the request of the victim

---

**2.** The first question to which counsel alluded was whether the victim was willing to give a statement about her having been "sexually assaulted." The second question posed by the detective taking the statement concerned the correctness of an understanding that the victim

and her parents had given the center's representative permission to sit in on the statement session rather than have the parents present in the room, and the victim gave affirmative responses to both questions.

and her parents. Her parents had not been present at the time of the questioning.

It is obvious from the remarks of the trial justice that the furthest thought from counsel's mind at the bench conference was delving into the victim's bias or motive. Here, counsel was speaking in terms of refreshing the victim's recollection when it was obvious to the trial justice, as it is to us, that there was absolutely no need to refresh the victim's memory about what happened when she was in Rondeau's company.

 Finally, Rondeau alleges that he was denied the effective assistance of counsel in violation of his federal and state constitutional rights. This claim is based primarily on the repeated failure of his counsel to object to the admission of allegedly prejudicial evidence. We have consistently maintained that the appropriate vehicle for review of claims of ineffective assistance of counsel is the request for post-conviction relief. *State v. Roderick,* 121 R.I. 896, 403 A.2d 1090 (1979); *State v. Levitt,* 118 R.I. 32, 371 A.2d 596 (1977).

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.