STATE

v.

**Lawrence J. MASTROFINE and John E. Broccoli.**

No. 87–426–C.A.

Supreme Court of Rhode Island.

Dec. 20, 1988.

James E. O'Neill, Atty. Gen., Jane M. McSoley, Asst. Atty. Gen., for plaintiff.

John P. O'Connor, Providence, James A. Ruggiero, Marciano, Ruggiero & Corrigan, North Providence, for defendants.

## OPINION

KELLEHER, Justice.

Lawrence J. Mastrofine (Mastrofine) and John E. Broccoli (Broccoli) were convicted by a Superior Court jury on charges of robbery and conspiracy to commit robbery. Before we reach the merits of their appeal, a brief description of the facts is in order.

On a cold afternoon, February 6, 1985, two men dressed in heavy jackets with hoods and scarves covering their faces robbed Gasbarro's Liquor Store in Providence. The duo had entered the store under the pretense of using the store phone. However, they quickly grabbed Steven DiPaolo (DiPaolo), an employee; and Lombard Gasbarro (Gasbarro), the store's general manager; handcuffed Gasbarro, put a gun to Gasbarro's head, and

robbed the store of about $13,000. During the robbery, the scarf of one of the intruders fell from his face and both DiPaolo and Gasbarro were able to view his heavily bearded, pockmarked face. This man was later identified as Mastrofine. Subsequent events revealed that the other robber was Peter Gilbert (Gilbert), who was later granted immunity and cooperated with the prosecution against Mastrofine and Broccoli.

Broccoli had become involved with the proposed robbery a few weeks before the store was robbed on February 6, 1985. As it turned out, DiPaolo, the store employee, was at the time of the holdup a confederate of Mastrofine, Gilbert, and Broccoli. At trial DiPaolo, as a witness for the prosecution, testified that a few weeks before the robbery he was contacted by his long-time friend Broccoli, who asked DiPaolo if he would serve as an inside man for a robbery at Gasbarro's Liquor Store. DiPaolo, apparently torn between remaining loyal to his cousin Gasbarro and helping his long-time friend Broccoli, first refused Broccoli's offer but later agreed to become part of the robbery team. DiPaolo and Broccoli then met with Gilbert, who had been chosen to perform the robbery, to set a date for that robbery.

The initial date for the robbery was postponed but on February 6, 1985, the robbery took place. In the afternoon on that date, DiPaolo saw Gilbert standing near the liquor store. DiPaolo signaled to Gilbert that he should not enter the store at that time. Broccoli then telephoned the store to ask DiPaolo why he had warned Gilbert to wait. DiPaolo informed Broccoli that a delivery would be arriving shortly and that it would be best for them to wait until it had been completed before robbing the store.

After the robbery Gasbarro gave the police a description of the robber who had the misfortune of having his scarf slip off his face. Gasbarro then selected Mastrofine's picture out of a photographic array as portraying the robber he had described. Later, both Gasbarro and DiPaolo made an in-court identification of Mastrofine as one of the robbers who entered the store on February 6, 1985. Meanwhile Broccoli, who was incarcerated, was sharing a prison cell with an individual named James J. Bennett (Bennett). The two cellmates were in the cell for one week, during which Broccoli made several incriminating statements concerning the robbery at Gasbarro's Liquor Store. Later, Bennett had the opportunity to be in the same holding room with a number of other inmates, including Broccoli and Mastrofine. Bennett then overheard the two talking about the robbery. At trial, Bennett testified for the prosecution and told the jury about the statements he had overheard.

We now turn to the various contentions made on defendants' behalf. Initially they argue that the trial justice erred in permitting Bennett's testimony regarding what he overheard in the prison cell. They claim that Bennett was acting as an informant-agent of the police and that the admission of his testimony was a violation of their own constitutional rights. In support of their claim of error they point to a line of United States Supreme Court cases beginning with *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and culminating with *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

We need only discuss the latest pronouncement, *Kuhlmann v. Wilson*, and the rationale set forth therein. The Court in *Kuhlmann v. Wilson*, delineated the line of cases upon which Mastrofine and Broccoli now rely and explained the propositions for which they stand. In *Kuhlmann* the Court addressed the question that had been left open by the prior line of cases following *Massiah* and held that it was not a violation of a defendant's constitutional rights to admit into evidence statements he made to a jailhouse informant who was placed in close proximity to the accused but made no efforts to stimulate conversation about the crime charged. *Kuhlmann v. Wilson*, 477 U.S. at 456, 106 S.Ct. at 2628, 91 L.Ed.2d at 382–83. The police in that case had instructed the informant to refrain from asking the accused any questions about the crime and merely

to listen to what the accused might say in his presence. *Id.* at 440, 106 S.Ct. at 2620, 91 L.Ed.2d at 372. The informant, following those directions, at no time asked any questions with respect to the crime, and only listened to the defendant and made some notes regarding what the defendant had to say. The accused's statements were found to be "spontaneous" and "unsolicited." *Id.* The Court then ruled that the evidence was properly admissible and held that in order to establish a constitutional violation, "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.* at 459, 106 S.Ct. at 2630, 91 L.Ed.2d at 384–85.

■ Here the issue before us is whether defendants have met the burden set out in *Kuhlmann v. Wilson* by demonstrating that the Providence police and their informant took some action, beyond merely listening, that was deliberately designed to elicit incriminating remarks. *Id.* The defendants have not met this burden. The trial justice in this case made factual findings that Bennett was not acting as an agent of the Providence police and that all of Broccoli's statements were voluntarily made to Bennett. Bennett called the Providence police on his own initiative and informed them that he was sharing a cell with a man named John Broccoli, whereupon he was told by the Providence police to "keep [his] ears open." Bennett at no time asked Broccoli any questions about the crime charged and merely listened to the statements that were voluntarily made to him by Broccoli. After reviewing the record, we conclude that Bennett did nothing, beyond merely listening, that was designed by the police and their informant deliberately to elicit incriminating remarks. All statements made to Bennett by defendants were "spontaneous" and "unsolicited," and the trial justice therefore properly allowed them into evidence. *Id.* at 460, 106 S.Ct. at 2630, 91 L.Ed.2d at 385.

■ At trial, Mastrofine requested that the trial justice give a specific cautionary instruction regarding the credibility of Gilbert and DiPaolo. He requested the trial justice to instruct the jury that the testimony of an accomplice must "always be scrutinized by a jury with great care and caution" and that the jurors must "look at it very, very carefully." The trial justice refused to give these specifically requested instructions but instead gave the jury general instructions on witness credibility.

In *State v. DeMasi,* 413 A.2d 99 (R.I. 1980), we emphasized that in this jurisdiction a trial justice has a strict obligation to avoid disclosing any opinion on the weight or the credibility of a witness's testimony as long as the case is still before the jury and held that the trial justice in that case did not err by refusing to give a specifically requested cautionary instruction on the credibility of an accomplice. *Id.* at 100 (citing *State v. Pella,* 101 R.I. 62, 220 A.2d 226 (1966)). We noted in that case that the jurors were made aware of the possibility that the accomplice's testimony might be unreliable and that their duty as triers of fact was to evaluate this testimony in that light; the defendant, we stated, is entitled to nothing more. *State v. DeMasi,* 413 A.2d at 101. These sentiments were recently reiterated in the case of *State v. Fenner,* 503 A.2d 518 (R.I.1986).

In light of our holdings in *DeMasi* and *Fenner,* it is obvious that the trial justice was correct when he refused to give the jury specific cautionary instructions on the credibility of Gilbert and DiPaolo.

■ Mastrofine and Broccoli also fault the trial justice for his refusal to grant their motions to pass or sever. On direct examination by the state, testimony was elicited from Gilbert that, "[y]ou don't rob anyone on the [Federal] hill without permission."[1] Counsel for defendants argue

---

1. This response was prompted by the prosecution's asking Gilbert if he had sought anyone's permission to rob the liquor store. Gilbert answered in the affirmative, and when asked to identify the grantor, he replied that permission had been granted by Gerlardo Mastracchio. Gerlardo Mastracchio had also been charged as part of the robbery conspiracy but at the conclusion of the state's case the trial justice granted his motion for a judgment of acquittal.

that this testimony substantially prejudiced their case by giving the jury the impression that "organized crime figures sanctioned this robbery" and that the trial justice should have granted their motion to pass or, in the alternative, for a severance.

The law is settled in Rhode Island that it is within the trial justice's sound discretion to grant or deny a defendant's motion to pass a case, *State v. Brown*, 528 A.2d 1098 (R.I.1987), or to grant or deny a defendant's motion to sever. *State v. Eddy*, 519 A.2d 1137 (R.I.1987). The trial justice's denial of a motion to pass the case is to be accorded great weight and will not be disturbed on appeal unless clearly wrong. *State v. Byrnes*, 433 A.2d 658, 667 (R.I. 1981). The trial justice's decision to deny a defendant's motion to sever will not be reversed unless the defendant can show that the trial justice abused his discretion and the denial of the motion amounted to a denial of a fair trial for the defendant. *State v. Eddy*, 519 A.2d at 1140.

We conclude that the trial justice did not abuse his discretion in this case by rejecting defendants' motions to pass or sever. We do not believe that the testimony to which defendants object brought about such an indelible taint as to have impaired the rights of Mastrofine and Broccoli to a fair and impartial trial.

■ Broccoli further claims that when Gilbert was cross-examined by Broccoli's counsel, Gilbert gave certain answers that were nonresponsive and implicated Broccoli in other criminal offenses that required the granting of his motion to pass the case. We disagree.

As Gilbert concluded his testimony on February 2, 1987, counsel for each defendant made a motion to pass the case because of Gilbert's remarks. The court at this point recessed for the day. On the following day the trial justice, after the jury had been escorted to the courtroom, told the jurors that they were to disregard completely Gilbert's unresponsive answers to questions asked of him by Broccoli's attorney. The trial justice impressed upon them the necessity of their verdict being based on competent evidence rather than Gilbert's utterances, and he suggested that if there were any doubts in anyone's mind about his or her ability to decide this case on anything but the evidence, each juror should make his or her feelings known to the trial justice. When the jurors were asked if they believed that they could completely disregard those statements, there was a unanimous affirmative response. Counsel for some defendants withdrew their motions, but Broccoli's counsel made it clear that he was still pressing the motion. In our opinion, any taint which might have resulted from Gilbert's nonresponsive comments was removed by the specific cautionary instructions given to the jury. *See State v. Brown*, 528 A.2d at 1103.

Mastrofine also argues that the indictment lodged against him should have been dismissed because certain photographs of him, which were used at the bail hearing, were unavailable for use at his trial. This loss, he claims, prevented his counsel from making an effective cross-examination of the witnesses who had identified him as being one of the two gunmen who had entered Gasbarro's.

After the bail hearing, a District Court justice entered an order sealing the bail-hearing transcript as well as the photographs. An official of the District Court's Sixth Division testified at trial and informed the trial justice that the loss was discovered sometime during 1985 when the District Court justice who had presided at the bail hearing called him about the record.

■ In *State v. Lewis*, 467 A.2d 1387 (R.I.1983), we emphasized that the prosecution is obligated to preserve discoverable evidence, but we also emphasized that a failure to do so does not necessarily warrant the imposition of sanctions. Before a trial justice can impose sanctions against the prosecution for loss of evidence, a defendant has the burden of demonstrating that (1) the state has acted in bad faith or was negligent with regard to the loss of evidence and (2) the defendant was prejudiced by the loss. *State v. Waite*, 484 A.2d 887, 891 (R.I.1984). Once a defendant has met this burden, the trial justice will weigh

the degree of negligence or bad faith on the part of the state and the significance of the lost evidence against the strength of the untainted evidence of guilt presented by the state. *State v. Rondeau*, 480 A.2d 398, 400 (R.I.1984); *State v. Lewis*, 467 A.2d at 1388.

At no time does Mastrofine ever charge the state with acting in bad faith, but he does claim that the state should have preserved the photographic array used at the bail hearing for future use at the trial. He argues that the police or the prosecution was obligated to substitute copies made of the original prints or obtain a protective order. This proposition overlooks the fact that the bail-hearing record and exhibits were sealed and that there is a complete absence of evidence about who or what caused the loss. However, for the purposes of review, we shall assume that Mastrofine's claim of negligence by the absence of the pictures is well taken.

Any negligence on the state's part or prejudice to Mastrofine's case was greatly outweighed by the evidence adduced at trial. Gasbarro, the victim, and DiPaolo, who was totally unaware of Mastrofine's part in the holdup, had an unobstructed view of Mastrofine's face, from inches away in an area where the lighting was good. Mastrofine had the misfortune of having his scarf slip when he was within inches of Gasbarro and DiPaolo. This proximity unquestionably improved their ability to identify him. Their testimony was corroborated by Gilbert, who testified that Mastrofine and he were the actual participants in the robbery. It is our belief that the strength of the prosecution's untainted testimony about Mastrofine's guilt greatly outweighs whatever prejudice might have inured to Mastrofine's case because of the missing photographs.

Mastrofine's final contention is that the in-court identification made of him was based upon an impermissibly suggestive pretrial identification situation. Having set forth the proposition, his brief fails to call to our attention any evidence of suggestiveness but merely relies on the fact that Gasbarro had stated on cross-examination that his identification of Mastrofine was "a combination" of what he observed in the store and the pictures shown to him by the police, plus the granting of Gasbarro's request to view a more recent photograph of Mastrofine. This proposition, standing by itself, does not establish a suggestive, much less an impermissible, pretrial identification.

The defendants' appeals are denied and dismissed, the judgments of conviction entered in each case are affirmed.