**STATE**

v.

**Juan MOREJON.**

**No. 91–184–C.A.**

Supreme Court of Rhode Island.

Feb. 21, 1992.
As Corrected Feb. 28, 1992.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, Juan Morejon, appeals from a Superior Court conviction whereby he was found guilty of robbery and possession of a kung fu weapon. The defendant was sentenced to forty years' imprisonment for robbery and one year's imprisonment for possession of a kung fu weapon, both sentences to be served consecutively. The defendant claims that the trial justice erred by (1) failing to find that the state's noncompliance with G.L.1956 (1981 Reenactment) § 11–41–15 prejudiced and effectively denied the defendant the right to a fair trial, (2) allowing the defendant to be impeached by the use of evidence of criminal convictions that were not fully disclosed by the state during discovery, (3) allowing the defendant to be impeached by the use of evidence of an immigration-deportation detainer, and (4) denying the defendant's motion for a new trial. For the reasons stated herein, we deny the defendant's appeal and affirm the judgment of the Superior Court.

On February 12, 1990, defendant was tried and subsequently convicted for the robbery of Pedro Perez (Perez) and possession of a kung fu weapon. At trial Perez testified that on January 19, 1988, he went to visit a friend on Elmwood Avenue. As Perez approached the door to his friend's home, a man later identified as defendant approached Perez from behind, put a knife to his back, and demanded his wallet. Perez indicated that at the time of the robbery there was an automobile registration, a five dollar bill, and an identification card in his wallet. After relinquishing his wallet, Perez stated that he was able to see defendant's face and that defendant was wearing red jogging pants. Perez then ran from defendant and, upon returning home, notified the police.

When the police arrived, they traveled around the neighborhood with Perez in search of defendant. Shortly thereafter they located defendant, who was walking with a woman later identified as defendant's wife, Rowena Jordan (Jordan).

The officer on duty that night indicated that in addition to removing a kung fu weapon from defendant, he found Perez's wallet on defendant's person. The officer further indicated that the contents of the wallet were limited to an identification picture of Perez. There was no automobile registration, nor was any money found therein. A knife was taken from Jordan's pocket, which Jordan indicated was defendant's. She stated further that defendant had put the knife into her pocket and instructed her to keep it there.

The defendant was arrested and transported to the police station. Perez accompanied the police back to the station, whereupon the police, without inventorying its contents, returned the wallet to Perez.

The defendant testified that he had known Perez for approximately two years. He claimed that he had lent Perez $100 to buy cocaine. The defendant further claimed that on the night of January 19, 1988, he asked Perez for repayment of the debt. Perez indicated that he did not have any funds to give defendant and as proof opened his wallet. To secure the repayment of the debt, defendant demanded Perez's wallet along with its contents. According to defendant, Perez handed the wallet to him but asked if he could keep the automobile registration contained in the wallet because he needed it in order to operate a motor vehicle. The defendant acquiesced and returned the automobile

registration to Perez. Thereafter, defendant claims, Perez walked away angry.

Jordan's testimony corroborated defendant's version of events. She testified that she was with defendant when he met Perez on the night of January 19, 1988. She indicated that while the two talked, she stood off to the side and watched Perez hand his wallet to defendant and defendant thereafter return a yellow paper to Perez that appeared to be an automobile registration. However, Jordan's testimony was discredited by evidence of her extensive criminal record.

Because the police had returned the wallet to Perez, it was unavailable for trial. However, over the objection of defense counsel photographs of the wallet, which were taken by the police prior to its return to Perez, were presented and admitted into evidence.

In addition to the foregoing testimony, defendant indicated on direct examination that he had come to the United States from Cuba in 1980 during the Mariel boat lift. He stated that he was currently under a parole condition and was applying for United States citizenship. Defense counsel also inquired into defendant's criminal record. Specifically defendant was asked if he had ever been convicted of the crimes of driving to endanger, death resulting, possession of a pistol without a license, and assault with a dangerous weapon. The defendant responded in the affirmative to each of the questions.

On cross-examination defendant was questioned with regard to two additional convictions not inquired into by defense counsel on direct examination. Specifically the state asked defendant if he had been convicted of assault with intent to murder and possession of a knife with a blade over three inches long. To both, defendant answered in the affirmative. Defense counsel objected to the state's reference to and use of the two additional offenses, claiming the state had failed to disclose the existence of the two additional offenses pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. *Although* the objection was overruled, the court issued a limiting instruction to the jury regarding the use of the additional convictions. In addition defendant was asked by the state if he was aware that there was a detainer lodged against him by the Immigration and Naturalization Service, to which defense counsel also objected. Again defense counsel's objection was overruled by the trial justice.

On February 23, 1990, following defendant's conviction, defense counsel interviewed Lillian Perez, the wife of Pedro Perez. At the time of the interview Lillian Perez was confined to the Adult Correctional Institutions for a period of four years following convictions for robbery and assault with a dangerous weapon. In addition she had been taking part in a drug-rehabilitation class. Relying upon his conversation with Lillian Perez, counsel filed a motion for a new trial based upon newly discovered evidence that was heard on March 20, 1990.

Lillian Perez testified that during the period of the alleged robbery she was under the influence of drugs on a daily basis. Since that period, she indicated, she had sustained a significant loss of memory and felt suicidal and hopeless. She testified that she had met defendant one or two times while she was under the influence of heroin or cocaine. Although she remembered discussing defendant with her husband sometime in January 1988, she was unable to recall whether the discussion took place while she was in prison. She indicated that her husband had stated that because he owed defendant money, defendant had been looking for him and, upon finding him, had accosted him with a knife and demanded his wallet. However, she testified, she was unaware of whether her husband had known defendant prior to the January 19, 1988 robbery, nor did she recall if defendant was seeking repayment of a loan from her husband.

After hearing Lillian Perez's testimony, the trial justice denied defendant's motion for a new trial. The defendant thereafter filed this appeal on June 1, 1990.

## I

The defendant's first contention is that the police department's failure to inventory the contents of the wallet prior to returning it to Perez, as required by G.L.1956 (1981 Reenactment) § 11–41–15, caused defendant irreparable prejudice and prevented him from receiving a fair trial. In addition, defendant asserts that given the police department's failure to comply with § 11–41–15, it was erroneous for the trial justice to admit photographs of the wallet that were taken prior to the department's returning the wallet to Perez.

Section 11–41–15 provides for the care, custody, and return of alleged stolen property and reads in pertinent part:

"(a) The officer who shall apprehend any person as principal or accessory in any robbery or larceny, shall secure the property alleged to be stolen * * * Upon receipt of the above property from the apprehending officer, the clerk or person in charge of the storage of alleged stolen property * * * shall enter into a book a description of every article of property alleged to be stolen * * *.

(b) The clerk * * * may deliver the property to the owner of such property upon satisfactory proof of ownership, provided that the following steps are followed: (1) A complete photographic record of the property is made; (2) The person from whom custody of the property was taken is served with a notice of the claim of ownership and is given a reasonable opportunity to be heard as to why the property should not be delivered to the person claiming ownership; (3) A signed declaration of ownership under penalty of perjury is obtained from the person to whom the property is delivered."

Compliance with the foregoing provisions allows the photographic record to be introduced as evidence in any court in this state in place of the actual alleged stolen property. *State v. Lewis,* 467 A.2d 1387, 1389 (R.I.1983).

In the instant case the police failed to comply with provisions (b)(1) and (b)(2) of § 11–41–15. Although a photographic record of the wallet was made, no photographic record was ever made of its contents. Furthermore defendant was not notified of its return to Perez nor was he given an opportunity to be heard concerning why the wallet should not have been returned to Perez. The defendant asserts that a proper inventory of the wallet and its contents would have corroborated his version of the events as they occurred. Specifically defendant claims that upon inventorying the wallet, the police would not have found an automobile registration contained therein. The absence of the automobile registration would therefore have provided support for his assertion that Perez gave defendant his wallet as collateral for a debt and that defendant had in fact returned the automobile registration following Perez's request. In short Perez was not the victim of a robbery.

■ We have previously held that "the prosecution is obligated to preserve discoverable evidence, but we also emphasized that a failure to do so does not necessarily warrant the imposition of sanctions." *State v. Mastrofine,* 551 A.2d 1174, 1177 (R.I.1988) (citing *State v. Lewis,* 467 A.2d 1387 (R.I.1983)). "Before a trial justice can impose sanctions against the prosecution for loss of evidence, a defendant has the burden of demonstrating that (1) the state has acted in bad faith or was negligent with regard to the loss of evidence and (2) the defendant was prejudiced by the loss." 551 A.2d at 1177 (citing *State v. Waite,* 484 A.2d 887, 891 (R.I.1984)). "Once a defendant has met this burden, the trial justice will weigh the degree of negligence or bad faith on the part of the state and the significance of the lost evidence against the strength of the untainted evidence of guilt presented by the state." 551 A.2d at 1177–78 (citing *State v. Rondeau,* 480 A.2d 398, 400 (R.I.1984) and *Lewis,* 467 A.2d at 1388).

■ In *Rondeau* we concluded that the loss of evidence by the police department was not the product of bad faith and that the defendant did not suffer any prejudice thereby. *Rondeau,* 480 A.2d at 400. Specifically the defendant was charged with sexual assault. At the scene of the crime the police discovered articles of the victim's

clothing. *Id.* Sometime between the defendant's arrest and the trial the articles of clothing were lost and consequently were unavailable for trial. *Id.* The defendant argued that had the clothes been available, it would have been apparent that they had not been ripped or torn in any fashion, thereby corroborating his assertion that the sexual activities between him and the victim were in fact consensual. *Id.* However, the officer who testified indicated that none of the articles of the victim's clothing that were retrieved were torn or ripped and that only one article was "stretched out." *Id.* Although we recognized that the loss of clothing was regrettable, given the officer's corroborating testimony, the loss was not prejudicial. *Id.* The jury could have concluded from the testimony of the defendant and the officer that the sexual activities were consensual, but it did not. *Id.* *See also State v. Mastrofine,* 551 A.2d at 1177–78 (whereby this court held that the defendant failed to establish any bad faith or negligence on the part of the state in the loss of photographs of the defendant used by identification witnesses, and any prejudice suffered thereby was greatly outweighed by the evidence adduced at trial); and *State v. Lewis,* 467 A.2d at 1388 (this court concluded that the failure of the police to photograph alleged stolen property prior to its return to the merchant who thereafter resold or lost the items, thereby rendering them unavailable for trial, was not the product of bad faith or negligence on the part of the police, and the defendant therefore did not suffer any prejudice).

In the instant case the evidence was not lost; rather, the police merely returned the wallet to Perez without making a complete photographic inventory. The record reveals no evidence of bad faith or negligence on the part of the police department. The defendant merely sets forth an unsubstantiated assertion that the police acted in bad faith in failing to comply with the provisions of § 11–41–15.

Even assuming arguendo that there was some bad faith or negligence on the part of the police department, defendant suffered no real prejudice. Although the failure of the police properly to inventory the contents of the wallet was regrettable, given the nature and value of the testimony of the arresting officer, it was not prejudicial. Similar to that in *Rondeau,* the officer's testimony here clearly corroborated defendant's version to the extent that at the time the wallet was seized from defendant, its contents were limited to an identification picture of Perez. No automobile registration was found therein. Furthermore, the jurors could have concluded from the testimony of defendant and the officer that a robbery did not take place, but they did not. Accordingly we believe that defendant suffered no real prejudice from the police department's noncompliance with § 11–41–15 and that the decision of the trial justice to allow the use of the photographs of the wallet was not in error.

## II

■ The defendant next claims that the trial justice erred in allowing the state to impeach defendant on cross-examination by the use of two felony convictions that were not previously disclosed to defendant pursuant to Rule 16 of the Rules of Criminal Procedure. On direct examination defendant testified to having been convicted of three felonies. On cross-examination the state inquired about two additional felony convictions not testified to on direct examination. Over defense counsel's objection the trial justice allowed the testimony of the two additional convictions into evidence. The additional convictions were apparently not disclosed to defense counsel pursuant to a pretrial discovery request. In an effort to cure any potential prejudice caused by the state's nondisclosure and subsequent use of the additional convictions, the trial justice issued a cautionary instruction to the jury that stated in part:

"[T]here may have been one or two convictions that were not made known to [defense counsel] when he recited the record of conviction of this witness. The state's attorney is generally the person who has access to full and complete records of conviction. So, apparently, there are two that were not called to

[defense counsel's] attention * * *. There is a fair way you can use this information and an unfair way. The fair way is you can take it into account together with everything else you're going to take into account in deciding whether to believe the witnesses in this case. The unfair way is to close your mind and say, 'He's bad. Therefore, he must have committed this crime too.' I will say it all again at the end of the case."

Despite the issuance of the foregoing cautionary instruction, defendant claims that the effect of the state's nondisclosure of the additional convictions and subsequent cross-examination was to create the impression in the minds of the jurors that defendant was in fact concealing parts of his past criminal record, thereby causing him irreparable prejudice.

"Rule 16 * * * [is a] criminal discovery mechanism, [that] attempts to ensure that both parties receive the fullest possible presentation of the facts prior to trial." *State v. Concannon*, 457 A.2d 1350, 1353 (R.I. 1983) (citing *State v. Coelho*, 454 A.2d 241 (R.I.1982)). "The primary purpose of discovery is to eliminate surprise at trial. A prosecutor or a defendant who does not comply with the rules of discovery undermines the judicial process." *State v. Concannon*, 457 A.2d at 1353. Accordingly, Rule 16 provides sanctions for a party's failure to provide discovery materials to an opposing party. *Id.* " 'The sanctions may include an order requiring the discovery, granting a continuance, prohibiting the party from introducing in evidence the material that was not disclosed, or entering any appropriate order.' " *State v. Lawrence*, 492 A.2d 147, 149 (R.I.1985) (citing *State v. Engram*, 479 A.2d 716 (R.I.1984)). However, "[t]he imposition of any Rule 16 sanction is a matter within the sound discretion of the trial justice." *Concannon*, 457 A.2d at 1353 (citing *State v. Coelho*, 454 A.2d at 245; *State v. Darcey*, 442 A.2d 900, 902 (R.I.1982)). "The trial justice is in the best position to determine whether any harm resulted from alleged noncompliance with discovery motions and whether the harm can be mitigated. Therefore, his or her ruling should not be overturned absent a

clear abuse of discretion." *State v. Boucher* 542 A.2d 236, 241 (R.I.1988) (citing *State v. Coelho*, 454 A.2d at 245). "Upon consideration of an alleged nondisclosure, a trial justice, and this court on review, should examine four factors: '(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors.' " *State v. Boucher* 542 A.2d at 241.

With respect to the first factor, we have held that in situations in which the record indicates a deliberate nondisclosure, a new trial will be granted without inquiring into the degree of harm caused by the misconduct. *State v. Concannon*, 457 A.2d at 1353. "The more difficult cases to resolve are those cases * * * in which there apparently has been inadvertent nondisclosure." *Id.* at 1354. Our review of the record did not disclose any evidence of a deliberate nondisclosure by the state. Without evidence to the contrary, we can only assume that the nondisclosure was inadvertent rather than deliberate. "In these situations, we must move to the second element of the test, which is prejudice to the opposing party." *Id.*

In examining the element of prejudice, we note that

"Rule 16 * * * is designed to prevent 'procedural' rather than 'substantive' prejudice. Procedural prejudice occurs when defense counsel must proceed to trial unprepared. To demonstrate procedural prejudice on appeal, defendant must show that had the information been disclosed, there is a likelihood that trial counsel using the undisclosed information could have created a reasonable doubt in the minds of one or more jurors to avoid a conviction." *Id.* (citing *In re Ouimette*, 115 R.I. 169, 179, 342 A.2d 250, 254–55 (1975)).

As indicated from the record with respect to the undisclosed convictions, defense counsel had in fact represented defendant during both proceedings. The defendant and counsel were therefore fully aware of the existence of both convictions and proceeded to trial fully prepared. Giv-

en defense counsel's prior relationship with defendant, one could not reasonably conclude that the state's nondisclosure and subsequent usage of the convictions upon cross-examination gave rise to any unfair surprise on the part of defendant. Furthermore, defendant has failed to demonstrate sufficient prejudice such that the state's compliance with defendant's discovery request would have influenced the outcome of the trial.

Moreover, we note that "the exclusion of testimony is an extreme remedy and should be applied sparingly." *State v. Boucher* 542 A.2d at 241 (citing *State v. Rudacevsky,* 446 A.2d 738, 740 (R.I.1982)). "A trial justice should first determine whether any other available discretionary measures can adequately neutralize the potential for prejudice resulting from the admission of the testimony." *Id.* The trial justice's curative instruction to the jury adequately and expediently cured any harm caused by the state's nondisclosure and subsequent usage of the two additional convictions upon cross-examination. The preclusion from evidence of the two additional convictions would have been an overly exacting penalty in response to the state's inadvertent nondisclosure. In light of the lack of prejudice suffered by defendant and the availability of other remedies, it was not an abuse of discretion for the trial justice to refrain from imposing such a drastic sanction.

### III

■ In addition to testifying about his past criminal record, defendant also indicated not only that he was originally from Cuba and came to this country during the infamous 1980 Mariel boat lift and that his current status was that he was under a parole condition and applying for residency. On cross-examination the state asked defendant if there was a deportation detainer lodged against him by the Immigration and Naturalization Service, to which question defense counsel objected. The defendant claims that the trial justice erred in allowing defendant to be cross-examined with respect to the deportation detainer because

it was beyond the scope of permissible cross-examination and created an implication before the jury that defendant had committed another crime or was an undesirable alien. This questioning, defendant asserts, effectively denied defendant the right to a fair trial.

"In this jurisdiction cross-examination of a witness is generally limited in scope to matters testified to on direct examination." *State v. Benevides,* 420 A.2d 65, 69 (R.I. 1980) (citing *Halpert v. Rosenthal,* 107 R.I. 406, 421, 267 A.2d 730, 738 (1970); *State v. Campbell,* 95 R.I. 370, 376, 187 A.2d 543, 547 (1963)); *see State v. O'Brien,* 122 R.I. 749, 753, 412 A.2d 231, 233 (1980). "Also permitted on cross-examination are questions designed to explain, contradict, or discredit any testimony given by a witness on direct examination, or to test his accuracy, memory, veracity, or credibility." *Benevides,* 420 A.2d at 69 (citing *State v. Ragonesi,* 112 R.I. 340, 346, 309 A.2d 851, 854 (1973); *Atlantic Refining Co. v. Director of Public Works,* 102 R.I. 696, 713, 233 A.2d 423, 432 (1967)); *see State v. Crowhurst,* 470 A.2d 1138, 1143 (R.I.1984), and *State v. O'Brien,* 122 R.I. at 753, 412 A.2d at 233. "However, the permissible scope and extent of cross-examination rests in the sound discretion of the trial justice." 420 A.2d at 69 (citing *State v. Bennet,* 122 R.I. 276, 278, 405 A.2d 1181, 1183 (1979); *State v. Eckhart,* 117 R.I. 431, 435–36, 367 A.2d 1073, 1075–76 (1977); *State v. Kieon,* 93 R.I. 290, 297, 175 A.2d 284, 288 (1961)). "[H]is rulings thereon will only be reviewed for an abuse of discretion." 420 A.2d at 69 (citing *State v. Mattatall,* 114 R.I. 568, 572, 337 A.2d 229, 232 (1975)).

In the instant case defendant alluded to his immigration status on direct examination. The state's cross-examination was simply a followup to defendant's answer. Conceivably such an inquiry may have been intended to clarify, to explain, to contradict, or to discredit defendant's testimony. Nevertheless, all are permissible avenues within the bounds of cross-examination. Hence, we are of the opinion that the trial justice did not abuse her discretion in allowing defendant to be cross-examined with respect to the deportation detainer;

rather, the trial justice properly defined the scope thereof.

## IV

■ Finally defendant contends that given the newly discovered testimony of the victim's wife, Lillian Perez, the trial justice erred in denying defendant's motion for a new trial. The defendant interviewed Lillian Perez on February 23, 1990, following the trial. As a result of his conversation with Lillian Perez, counsel filed a motion for a new trial based upon newly discovered evidence.

As stated, at the hearing on defendant's motion for a new trial Lillian Perez testified that during the period of the alleged robbery she was under the influence of drugs on a daily basis. Since that period she indicated that she had sustained a significant loss of memory and felt suicidal and hopeless. She testified that she had met defendant one or two times while she was under the influence of heroin or cocaine. Although she remembered discussing the defendant with her husband sometime in January 1988, she was unable to recall whether the discussion took place while she was in prison. She indicated that her husband had stated that because he owed defendant money, defendant was looking for him and, upon finding him, had accosted him with a knife and demanded his wallet. However, she testified, she was unaware of whether her husband had known defendant prior to the robbery of January 19, 1988, nor did she recall if defendant was seeking repayment of a loan from her husband.

We have consistently recognized that newly discovered evidence serves as the basis for a new trial if such evidence satisfies a two-part test. *State v. Estrada*, 537 A.2d 983 (R.I.1988); *State v. Tavares*, 461 A.2d 390 (R.I.1983); *State v. Bassett*, 447 A.2d 371 (R.I.1982); *State v. Carsetti*, 111 R.I. 642, 306 A.2d 166 (1973). The threshold test consists of four factors. First, the evidence must actually be newly discovered since trial. *State v. Estrada*, 537 A.2d at 986. Second, the defendant must have been diligent in attempting to discover the evidence for use at the original trial. *Id.* Third, the evidence must not be merely cumulative or impeaching but must be material to the issue. *Id.* Last, the evidence must be of the kind that would probably change the verdict at a new trial. *Id.*

If the trial justice decides that the evidence meets this threshold test, it remains for the trial justice to determine whether the evidence presented is credible enough to warrant a new trial. *Id.* In doing so the trial justice must exercise his or her independent judgment as to the credibility of the witnesses and the weight to be given their testimony. *Id.; see also State v. Correia*, 106 R.I. 655, 663, 262 A.2d 619, 623 (1970). "This court will not disturb the decision of a trial justice on a motion for a new trial unless that decision is clearly wrong or unless the trial justice in reviewing the evidence overlooked or misconceived relevant and material evidence." *State v. Brown*, 528 A.2d 1098, 1104 (R.I. 1987) (citing *State v. Collazo*, 446 A.2d 1006, 1012 (R.I.1982)).

■ We do not believe that the trial justice was clearly wrong or that she misconceived or overlooked material evidence in adjudging the posttrial testimony of Lillian Perez to be incredible. Our reading of the record convinces us that the trial justice was indeed correct in characterizing Lillian Perez's testimony as "not the kind of evidence that could, by any stretch of the imagination, have impeached the victim Perez to the point where it would have been a different verdict." Consequently we shall not disturb the trial justice's decision.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.