STATE

v.

Michael CHARETTE.

No. 94–165–C.A.

Supreme Court of Rhode Island.

Jan. 21, 1997.

Annie Goldberg, Assistant Attorney General, Aaron Weisman, Assistant Attorney General, for Plaintiff.

Norman E. D'Andrea, Providence, for Defendant.

## OPINION

FLANDERS, Justice.

The defendant, Michael Charette (Charette), was convicted by a jury of robbing and assaulting an eighty-eight-year-old woman in her own home.[1] Claiming that he was mistakenly identified as the culprit, Charette assails his conviction and sentence on manifold grounds and asks us to order a new trial because of alleged errors committed by the trial justice. Having reviewed the record

---

1. Charette was convicted of several crimes arising out of his craven attack: G.L.1956 §§ 11–39–1 (robbery), 11–8–1 (burglary), 11–5–10 (assault on a person sixty years of age or older causing bodily injury), and 11–5–1 (assault with intent to commit robbery).

and considered his arguments, we conclude that there is no basis to do so and we therefore affirm the judgment of conviction.

### Background

The crime scene was a vestibule in Woonsocket, Rhode Island. Living alone in her home, eighty-eight-year-old Aldea DesPlaines (DesPlaines) had been watching television (the Lawrence Welk Show) during the early evening hours of Saturday, December 15, 1990. Expecting company, she heard a rap at her front door and opened it. To her dismay, she was immediately accosted by a hooded man who said, "Let's go upstairs." Terrified, DesPlaines tried desperately to push the intruder out, but he would not go gently into the night. Instead, he knocked her to the floor, dashed upstairs, snatched her pocketbook, and slunk away.

Fortunately he did not depart undetected. DesPlaines's neighbor, Edward LaMoore (LaMoore), heard the commotion and decided to have a look. Peering out through his kitchen door, LaMoore saw a man emerge hurriedly from DesPlaines's doorway. They were about twenty-five feet apart. Their eyes met. Instantly, he recognized the man as someone he knew: Michael Charette. Startled, Charette quickly drew the hood of his sweatshirt over his head and took off down a pathway. LaMoore immediately called the police and told them what had happened.

A police officer arrived on the scene in a matter of minutes. Bloody and scared, DesPlaines recounted the tale of her nightmarish experience. LaMoore fingered Charette, identifying him by name as the fleeing assailant. Acting on a tip, the police nabbed Charette the next day, finding him cowering behind a washing machine in a nearby apartment. He put up a fight but was eventually subdued. A search of the apartment turned up DesPlaines's pocketbook. LaMoore later picked out Charette's photo from an array of snapshots shown to him by the police.

Ultimately, a grand jury returned a multicount indictment against Charette. After unsuccessfully seeking to suppress the identification evidence, Charette went to trial on January 21, 1993. Because the jury failed to reach a verdict, a mistrial resulted. A second trial began on May 24, 1993, and ended

in his conviction. After the court sentenced him to 125 years of incarceration, Charette prosecuted this appeal.

Claiming that he had recently unearthed new evidence proving that another person had committed the crime, Charette asked us to remand his case for a hearing on his motion for a new trial. We obliged. The trial justice conducted a four-day hearing, found the evidence to be no more than impeaching, and denied the new-trial motion.

### Analysis

Charette now mounts a multifront attack on his conviction and sentence. First, he charges that the out-of-court identifications by LaMoore were unreliable because (1) his observations occurred in the dark of night and (2) the photo-selection and identification process was unduly suggestive. To the extent that Charette is challenging the denial of his suppression motion, his claim is foredoomed because he failed to furnish us with a transcript of that proceeding. *See State v. Mattera,* 671 A.2d 1227, 1229 (R.I. 1996) (a party seeking to have an alleged error reviewed must provide us with so much of the record as may be required to enable us to consider the matter). But having scoured the trial record, we cannot fault the justice for admitting this evidence because we are unable to conclude that there was a substantial likelihood of misidentification. LaMoore and Charette were not strangers; indeed, LaMoore testified that he had known Charette for years. Although his nighttime observation of Charette was brief, LaMoore watched him under adequate lighting conditions, at close range, and with an unobstructed view. He even identified Charette by name to the police long before being shown any photos. Given the totality of these circumstances, we need not decide whether the photographic array was impermissibly suggestive because the identification flowed from a reliable, untainted, and independent source. *See State v. Dufault,* 540 A.2d 355, 357 (R.I. 1988) (even assuming the photographic array was unnecessarily suggestive, when the other identification evidence was sufficiently reliable, it is appropriate grist for the jury's mill).

Charette next argues that the trial justice erred in denying his motion for judg-

ment of acquittal. He strives to convince us that there was no breaking (that is, no use of force) because DesPlaines voluntarily opened her front door. But when the evidence is viewed in the light most favorable to the state and all reasonable inferences consistent with guilt are drawn, a critical fact emerges: Charette first had to open the screen door before he could knock either on the front door or on poor Ms. DesPlaines. That opening action was enough to constitute a breaking. *See State v. Simpson,* 611 A.2d 1390, 1393–94 (R.I.1992) (discussing the standard for passing on a motion of judgment of acquittal and finding the breaking element of burglary satisfied because circumstantial evidence indicated the defendant had entered the victim's apartment by opening a screen window).

 Charette also criticizes the trial justice for denying his new-trial motion. But evidence that is merely cumulative or impeaching or that would not be apt to change the verdict will not entitle a defendant to a new trial—even if it can be properly classified as newly discovered. *E.g., State v. Morejon,* 603 A.2d 730, 737 (R.I.1992) (discussing all the relevant factors); *State v. Tavares,* 461 A.2d 390, 391–92 (R.I.1983) (same). Exercising his independent judgment, the trial justice found Charette's new witnesses to be unworthy of belief and his new evidence to be no more than impeaching. Having sifted the record to determine whether the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong, we have found nothing that would warrant overturning his decision. *See Morejon,* 603 A.2d at 737.

Charette's other assignments of supposed error also lack substance. For example, his claim that the trial justice erred in not giving a lesser-included-offense instruction overlooks the fact that no contemporaneous objection was lodged to the final charge. *See Jefferson v. State,* 472 A.2d 1200, 1203–04 (R.I.1984) (remaining mute in these circumstances constitutes a waiver unless it can be shown that the professed error "rises to substantial constitutional dimensions" and that

defense counsel's silence was "not an intentional tactical bypass"). In our view Charette cannot scale *Jefferson*'s heights. Likewise, Charette's argument that his sentence is manifestly excessive is premature, given his failure to seek revision in the trial court by moving under Rule 35 of the Superior Court Rules of Criminal Procedure. *See State v. Baptista,* 632 A.2d 343, 345 (R.I. 1993) ("a Rule 35 motion determination is a prerequisite to an appeal to this court as to the propriety of a sentence"). Charette's remaining claims are similarly wanting on the facts or on the law.[2]

### Conclusion

For these reasons we deny and dismiss Charette's appeal, affirm the judgment of conviction, and remand the papers in this case to the Superior Court.

BOURCIER, J., did not participate.

---

2. Some concern discretionary rulings (for example, the trial justice's decision to deny Charette's motion to view the crime scene) where there has been no abuse of discretion shown. Others are bereft of any developed argumentation (that is, he supplied no meaningful case or record citation) and are therefore not subject to review. *See* Sup.Ct. R. 16.